HENRY H. PERSONS and JOHN R. HAZEL, as Receivers of the BANK OF COMMERCE in Buffalo, Respondents, *v.* BUFFALO CITY MILLS, LIMITED, Appellant, Impleaded with EDWARD H. KRUGER, Sole Member of the Firm of E. H. KRUGER & Co.

*Service of a summons on a corporation — delivery thereof to an alleged manager of the corporation — proof that he is such.*

What proof of the service of the summons and complaint upon the Buffalo City Mills, a defendant corporation, by their delivery personally to one Brown, conceded to have been at one time the manager of the corporation, is sufficient to sustain such service, on a motion to set the same aside based upon an affidavit of said Brown "that he is not the cashier, treasurer or managing agent of the said Buffalo City Mills, Limited, within the State of New York, or any other place, and that he has no connection with the said Buffalo City Mills, Limited, as employee, agent, stockholder or director of said corporation, and that he has no connection with said Buffalo City Mills, Limited, in any way whatever, nor has he been for several months past," considered.

APPEAL by the defendant, Buffalo City Mills, Limited, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 28th day of December, 1897, denying said defendant's motion to set aside the alleged service of the summons and complaint herein, made upon it on the 23d day of November, 1897, at the Kemble Building in the city of New York.

This action was brought to recover the amount of a promissory note, given by the defendant Edward H. Kruger, under his firm name of E. H. Kruger & Co., to the defendant, the Buffalo City Mills, Limited, which note the latter, for value received, indorsed and delivered to the Bank of Commerce in Buffalo.

It was conceded by the appellant that Brown, who was served with the summons and complaint as the manager of the Buffalo City Mills, Limited, was at one time the manager of that company, but it was contended by the appellant that he had ceased to be such at the time the summons and complaint were served.

*C. J. Church,* for the appellant.

*Norris Morey,* for the respondents.

HARDIN, P. J.:

Plaintiffs' complaint states that on the 5th day of October, 1896, the defendant Kruger, under his firm name of E. H. Kruger & Co., made a promissory note in writing to the order of the defendant, Buffalo City Mills, Limited, one month after date for the sum of $1,500, and that the note was not paid at maturity, and demand was duly made and notice of protest given.

The affidavit of Lawson is to the effect that on the 23d of November, 1897, in an office connected with and adjoining room 29 of the Kemble Building, at 15–25 Whitehall street, in the city of New York, he served the summons upon the Buffalo City Mills, Limited, by delivering to Andrew Brown personally, as manager of the Buffalo City Mills, Limited, a true copy of the summons; and the affiant further states "that upon the directory in the main hall of said Kemble Building, at the time of such service, there appeared the name of Buffalo City Mills, Limited, and the location of the office of the said Buffalo City Mills, Limited, appeared on said directory, opposite to such name, 'Room 29, 3rd floor.' Deponent further says that upon the door of room 29, upon the 3rd floor of said Kemble Building, at the time of such service, there was printed the following: 'Agency of Buffalo City Mills.'"

Mr. Persons, in his affidavit, states that he is one of the receivers of the Bank of Commerce, and that among the assets of the bank he found a large amount of commercial paper, "amounting to about $160,000.00, made or endorsed by the defendant, the Buffalo City Mills, Limited, E. H. Kruger & Company, M. H. Brown, Andrew, Brown and the Acme Wood Fibre Company; the signature upon such paper of E. H. Kruger & Co., of Mary H. Brown, signed by Andrew Brown, as attorney, and of Acme Wood Fibre Company by Andrew Brown as president; and all the paper made or endorsed by the defendant with the name, 'Buffalo City Mills, Limited,' was signed by Andrew Brown, Manager." His affidavit states in detail the investigations made which revealed the connection of Andrew Brown with the paper and with the management of the Buffalo City Mills, Limited; and a large amount of the paper so held by the bank was offered by said Brown, as manager of the Buffalo City Mills, Limited, and that he procured the discount thereof in behalf of the appellant. His affidavit also details interviews held with

Brown, and attempts and efforts and negotiations, to adjust the paper held against the appellant and the other parties mentioned, and states several declarations and assertions made by Brown in the interest of, and in behalf of, the Buffalo City Mills, Limited; and he further states that during such negotiations " Brown has never stated or intimated in conversation, or in correspondence, that his relations and duties as manager of the Buffalo City Mills, Ltd., had changed, or that he had ceased to be manager for that company, or that there was any other person who had taken his place, or who had charge of or was connected with the business of the Buffalo City Mills, Ltd., at New York or in the State of New York." The affidavit also states numerous other facts tending to show the activities of Brown in behalf of the appellant.

The matter stated in Persons' affidavit is corroborated by an affidavit of Mr. Hazel, the other receiver. Subjoined to their affidavits are several letters received by them in respect to the notes held by the Bank of Commerce.

Kamp's affidavit states that at the time of the organization of the Buffalo City Mills, Limited, Brown was a subscriber for shares of stock; and his affidavit further states that at a meeting of the stockholders on May 8, 1894, " Andrew Brown was appointed manager of the company at an annual salary of $6,000, and the manager, by resolution, was also authorized to act as treasurer of the company, to receive and disburse all moneys of the company and to sign and endorse for the company all promissory notes, checks, drafts and other obligations calling for the payment of money."

The affidavit of Brown, to the effect " that he is not the cashier, treasurer or managing agent of the said Buffalo City Mills, Limited, within the State of New York or any other place, and that he has no connection with the said Buffalo City Mills, Limited, as employee, agent, stockholder or director of said corporation, and that he has no connection with said Buffalo City Mills, Limited, in any way whatever, nor has he been for several months past," is an unsatisfactory and insufficient proof that he had ceased to be a managing agent, when read in connection with the affidavits and proofs furnished by the respondents in opposition to the motion to set aside the service of the summons.

In *Kieley* v. *The Central Complete Combustion Mfg. Co.* (13

Misc. Rep. 85) it was held that, "Where it appears that a person has been managing agent for a corporation, the burden rests upon the corporation to show a termination of such relation."

Upon all the proofs submitted at the Special Term, we think it was warranted in reaching the conclusion that the defendant had not successfully borne the burden required of it. (*Donadi* v. *The New York State Mut. Ins. Co.*, 2 E. D. Smith, 519.)

In *Taylor* v. *Granite State Prov. Association* (136 N. Y. 346) it was said : "Where there is conflicting evidence with respect to a disputed fact arising upon a motion, it is the province of the court, in which the motion was made, to settle the conflict." In that case it was further said : "A managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it." In that case there only appeared the relation of attorney and client, and it was held that that did not constitute such an agency as is required by the Code. That case is referred to in *Palmer* v. *Chicago Evening Post Co.* (85 Hun, 403), and satisfactorily explained.

In *Wamsley* v. *Horton & Co.* (68 Hun, 549) an affidavit was produced to the effect that Horton was not a managing agent at the time of the service of the summons, and in opposition to such an affidavit it was shown that Horton was chairman of the board of directors ; and, in reply thereto, Horton stated in an affidavit " That he was not such chairman when the summons was served upon him. He does not deny that he was chairman in September last, nor that he is the principal owner of the stock of the defendant." In commenting on the situation thus presented, the court observed : " He thus, in substance, admits the facts stated in the opposing affidavit, but seeks to avoid them by the statement that, though he was chairman in September, 1892, he was not chairman on the 9th of January, 1893. In my judgment he was called upon to state the facts which effected the change. It may well be that, in law, he is still chairman, notwithstanding his belief to the contrary. When we know the precise facts with regard to the alleged change in the situation, we will be better able to judge whether the broad assertion that he

was not chairman on the 9th day of January, 1893, is an accurate statement of fact or an accurate conclusion from the actual facts." That case was affirmed (139 N. Y. 656).

In *Pope* v. *Terre Haute Car Mfg. Co.* (87 N. Y. 140) it was said that the object of all service of process for the commencement of a suit or any other legal proceeding "is to give notice to the party proceeded against, and any service which reasonably accomplishes that end answers the requirements of natural justice and fundamental law."

No one can read the affidavits, letters, correspondence and proofs submitted at the Special Term without reaching the conclusion that the service of the summons made in this case was sufficient to arrest the attention of the Buffalo City Mills, Limited, and that its interests and rights will be protected and asserted.

The affidavits and proofs at the Special Term presented a case quite unlike *Reddington* v. *Mariposa Land & Mining Co.* (19 Hun, 405), cited by the learned counsel for the respondent.

The affidavits used at the Special Term clearly indicate that no person has been designated upon whom service might be made by filing a designation thereof in the office of the Secretary of State, and that no officers were to be found in the State of New York upon whom service could be made. We think that the Special Term reached the proper conclusion upon all the affidavits and proofs before it, and that its order should be sustained.

All concurred.

Order affirmed, with ten dollars costs and disbursements.