*127 ORDER GRANTING MOTION TO DISMISS
KATHARINE ENGLISH, Chief Judge.
A. BACKGROUND; INTRODUCTION
On June 4, 2004, Plaintiff Nguyen filed a complaint against four Defendants—Spirit Mountain Casino (Casino), Spirit Mountain Gaming, Inc (SMGII)., the Grand Ronde Gaming Commission (Commission), and the Confederated Tribes of the Grand Ronde Community of Oregon (Tribe). The complaint, seeking damages for personal injury based on theories of common law negligence, alleged that Plaintiff slipped, fell, and was injured in a women’s bathroom at the Casino on October 18, 2003. The complaint averred that the Defendants were negligent in not regularly monitoring, inspecting and cleaning the women’s bathroom, and in failing to warn Plaintiff about the alleged hazard and danger. The complaint sought both economic and non-economic damages.
Plaintiff sought to serve the summons and complaint on the Casino and SMGII by serving the Secretary of the Tribal Council and the Tribal Attorney. Plaintiff also served the Council Secretary and the Tribal Attorney as representatives of the Commission, but Plaintiff also served the “Chief Executive Officer” of the Commission. The Tribe was served by again serving the Secretary of the Tribal Council and the Tribal Attorney.
In a motion filed on behalf of all four of the Defendants, Defendants moved for the dismissal of Plaintiffs complaint, “upon the grounds that the Tribal Court lacks jurisdiction over the subject matter, that there has been insufficiency of process, insufficiency of service of process, and that Plaintiff has failed to state ultimate facts sufficient to state a claim for relief.” More specifically, Defendants contend that Plaintiff has not stated a claim for relief against the Commission because it “is a regulatory body which regulates the games offered inside the Casino.” The Commission “has no involvement in the day-to-day operations of the Casino and makes no decisions regarding the maintenance of the Casino.” With regard to the *128 Tribe, Plaintiff has not stated a claim for relief against it because, although the Tribe is the “sole shareholder of Spirit Mountain Gaming, Inc.,” it is that entity which “operates the Casino,” and is “a corporation chartered under tribal law to operate separately, autonomously and independently from the Tribe.” As for SMGII, Defendants assert that the Court lacks jurisdiction over the subject matter, and that process and service of process were insufficient, because Plaintiff did not give timely notice of the injury to the Chief Executive Officer (CEO) of SMGII, as is required by the Tribal Toil Claims Ordinance. Spirit Mountain Casino simply is an assumed business name of SMGII, Defendants contend.
In response, Plaintiff has argued that she gave timely notice of the injury first to Casino first aid staff, to risk management for and the insurer for SMGII, and to the Secretary of the Tribal Council, the Tribal Attorney, and the “CEO” of the Commission. Citing Oregon case law, Plaintiff argues that she substantially complied with the notice requirements of the Ordinance. She contends that giving notice to risk management, to SMGII’s insurer, and to the Tribal Attorney should suffice because they are all agents of SMGII. She also notes that the attorney is the authorized representative for the Casino. Giving notice to the Tribe should be enough because it is the sole shareholder in SMGII, and notice to it, thus, should be imputed to SMGII.[1] She asserts that the Commission is a proper Defendant because it regulates the Casino and SMGII.
Plaintiff does not contend that she gave timely notice to the CEO of SMGII. And, according to an affidavit filed by the CEO, he never has received any notice from Plaintiff, and only learned of Plaintiffs claim on September 9, 2004, when he discussed his affidavit with Defendants’ attorneys.
B. ISSUES
As framed by the parties, the issues before the Court are whether Plaintiff was required, before bringing suit, to give proper tort claim notice to the CEO of SMGII, and whether either the Tribe or the Commission are proper Defendants in this case. Defendants admit that Plaintiff gave proper and timely notice to the Tribe and the Commission, but they contend that the Commission is merely a regulatory body and that it is SMGII, rather than the Tribe, that is responsible for the day-today operation of the Casino.
C. Discussion
As explained below, the Court grants Defendants’ Motion to Dismiss. The Tribal Ordinance requires that Plaintiff have given timely tort claim notice to the CEO of SMGII. She did not do that. Principles of agency and of imputed knowledge do not apply here because the Ordinance is clear, more specific, and more demanding. The Casino is simply an assumed business name of SMGII and, even if that were not true, Plaintiff no more gave the required notice to the Casino than she did to SMGII. Neither the Commission nor the Tribe is a proper Defendant in this case.
1. No timely tort claim notice was given to the CEO of SMGII.
The Tribal Tort Claims Ordinance makes the giving of timely and proper notice of the claim a prerequisite to the filing of any Court action. In addition, *129 when a tort claim is based on the act or omission of any Tribal corporation, such as SMGII, written notice also must be given to the CEO of the corporation. Section 255.6(d)(1) of the Ordinance provides:
No action may be brought in Tribal Cm/ri for monetary damages under this Ordinance and no claim shall be valid for monetary damages under this Ordinance unless the person who claims to have suffered an injury shall send a written notice of the claim for monetary damages as provided in Section (d)(2) below by certified mail return receipt requested to the Secretary of the Tribal Council and the Office of Tribal Attorney. In the case of any claim 'wherein it is alleged an injury was caused by the act or omission of any Tribal Commission, authority, corporation or enterprise or any agent, employee or officer of such Tribal Commission, authority, corporation or enterprise, the written notice required by this section also shall be given to the chief executive officer of such Tribal Commission, authority, corporation or enterprise.
(Emphasis added). “To be valid under th[e] Ordinance,” the written notice of claim “shall have been given no later than 180 days after the act or omission giving rise to the injury.” § 255.6(d)(3). The written notice must include certain specified information, including the claimant’s name, address and telephone number, and a concise statement describing the circumstances of the injury and who was involved. § 255.6(d)(2).
Those provisions could not be much clearer or more emphatic. Giving timely written notice under the Ordinance is an absolute prerequisite to bringing a tort case in Tribal Court. Without such notice, “[n]o action may be brought” and “no claim shall be valid for monetary damages[.]” § 255.6(d)(1). And, when any claim alleges that an injury was caused by the act or omission of any Tribal authority, “corporation,” or enterprise, the written notice must be given, not only to the Secretary of the Tribal Council and the Tribal Attorney, but “also” to the CEO of the authority, corporation, or enterprise. Id. There is nothing ambiguous or uncertain about that requirement and, by the Ordinance’s own terms, the Court has no authority or discretion to overlook a litigant’s failure to comply with the notice requirements.[2]
In addition, if there were any ambiguity about the notice provisions, the Ordinance also emphasizes that those provisions are part of a limited waiver of sovereign immunity that is to be strictly and narrowly construed. Section 255.6(e)(5) provides that:
The procedures and standards for giving notice of claims and commencing actions in Tribal Court * * * are integral parts of the limited waiver of sover *130 eign immunity provided by this Ordinance and shall be strictly and narrowly construed. A tort claim for monetary damages against the Tribe shall be forever barred unless written notice of the claim is presented to the Tribe and an action for monetary damages relating to any such claim is commenced in Tribal Court in compliance with Section (d) of this Ordinance.
Again, that provision could scarcely be more emphatic. Thus, when Plaintiff contends that she has “substantially complied” with the notice requirements—even though admittedly she did not give written notice to the CEO of SMGII—she in essence asks the Court to do what it cannot do here, that is, rewrite, loosen, or forgive non-compliance with the Ordinance’s notice provisions.[3]
In seeking to defeat or evade the unambiguous demands of the Tribal Tort Claims Ordinance, Plaintiff relies on legal principles that might well have force in other contexts, but which are of no moment here. For example, in general when considering whether sendee has been effected on a corporation under Fed.R.Civ.P. 4(h)(1), it is enough to have delivered a copy of the summons and complaint “to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]” Under Oregon law, the “registered agent appointed by a corporation shall be an agent of the corporation upon whom any process, notice or demand required to be served upon the corporation may be served.”' As noted above, here the Tribal Attorney is the registered agent for the Casino. Moreover, “[t]he following statement from a pre-federal rule decision often has been used to determine whether the person served was a proper agent under the Rule.”
“The rationale for all rules for service of process on corporations is that service must be made on a representative so integrated with the corporation served as to make it a priori supposable that he will realize his responsibility and know what he should do with legal papers served on him.”
4A Charles A. Wright and Arthur R. Miller, Federal Pleading and. Practice § 1101 at 563 (3d ed 2002), quoting Goetz v. Interlake S.S. Co., 47 F.2d 753, 757 (1931). That concept was presumably the genesis of Plaintiffs argument that giving notice to the Tribal Attorney should be enough because the attorney “had a fiduciary duty to inform [the Tribe] and Defendant Spirit Mountain Gaming, Inc. of Plaintiffs claim for damages against it.”
Plaintiff also relies on the fact that the Tribe is the sole shareholder in SMGII.[4] And, in other contexts and under the federal rules of procedure, “service has been upheld on stockholders,” in addition to “lower echelon corporate officers, and agents who are not officers or managing or general agents, such as * * * resident counsel.” 4B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1116 at 174-75 (footnotes omitted).
But none of those arguments or general propositions of law can help Plaintiff here. *131 This Court generally follows the Federal Rules of Civil Procedure. And, if those rules applied, Plaintiffs notice given to an agent or a shareholder might be enough. The federal rules, however, cannot tramp the unambiguous demands of the Tribal Tort Claims Ordinance. That is, the question is not what the federal rules require or permit, or how the issue of notice would be analyzed and resolved under the federal rales. Rather, the sole question is whether Plaintiff gave the written notice that the Ordinance absolutely demands be given. Under the Ordinance, Plaintiff had to give timely, written notice to the CEO of SMGII. She did not. That is the end of the inquiry.[5]
2. Even if the Casino is a proper Defendant, no timely notice was given to the CEO.
As noted, the Casino also is a Defendant named in Plaintiffs complaint. In their Motion to Dismiss, Defendants argue that the Casino is not a proper Defendant because Spirit Mountain Casino simply is an assumed business name of SMGII. This Court need not decide whether that fact alone would be enough to grant the Motion to Dismiss. Certainly, the Casino is a part of SMGII and, for the same reasons that Plaintiff failed to give proper tort claim notice to SMGII, she also failed to notify the Casino. That is, there is nothing about naming the Casino as a Defendant that makes Plaintiffs tort claim notice any better.
3. Neither the Commission nor the Tribe is a proper Defendant.
Defendants’ Motion to Dismiss the Commission and the Tribe as Defendants amounts to a 12(b)(6) Motion to Dismiss for “failure to state a claim upon which relief can be granted.” Fed.R.Civ.P. 12(b)(6). Because those Defendants have no responsibility for the day-to-day operation of the Casino, and because Plaintiffs claims allege negligence in the operation and maintenance of the Casino, Defendants reason that those two Defendants cannot be liable. The Court agrees.
The Commission is a purely regulatory body. It was established “to regulate Class II and Class III gaming on Grand Ronde Indian Land,” and it is to “exercise all powers necessary to regulate” such gaming. Gaming Ordinance § (g)(1),(8). Its duties include processing all license applications, denying, limiting, revoking, rescinding or suspending any license, if necessary, causing background cheeks to be performed, printing and making available all license application forms and licenses, collecting license fees, inspecting and examining all premises, equipment and supplies where gaming is conducted, reviewing gaming contracts, promulgating regulations that are necessary to carry out the Ordinance, imposing civil penalties and sanctions, and excluding certain individuals from the gaming facility. Gaming Ordinance § (g)(9). Its duties do not include maintaining the restrooms at the Casino.
Plaintiff wonders “how the Gaming Commission can properly regulate games and gaming activities inside the Casino without being involved in the operation of the Casino premises.” According to Plaintiff, “[r]egulatory Commissions and authorities charged with overseeing the legal *132 requirements.of gaming activity must necessarily have some involvement with the operation and supervision of patrons involved in those gaming activities inside a Casino.” That argument conflates regulation with operation. Undoubtedly, a regulatory body is “involved” with the business it regulates in the sense that it is the regulator. But that is not to say that the regulator has any responsibility over or ability to control day-to-day operations. If the logic of Plaintiffs argument were accepted, then a regulator could be sued whenever the business or entity it regulated committed a tort.
The Tribe is the sole shareholder in SMGII, but it does not control the day-today operation of the Casino. Instead, under the Gaming Ordinance it is the “corporation,” that is SMGII, that is “responsible for ensuring sound development and management of all Class II and Class III gamine activities carried out under th[e] Ordinance.” Gaming Ordinance § (q). Plaintiff contends that because the Tribe is the sole shareholder it “apparently has controlling authority and/or at least significant influence over SMGI and it’s [sic ] decisions concerning liability claims and possible settlement of those claims.” The issue, however, is whether the Tribe has any authority over the day-to-day operation of the Casino, and in particular, over the maintenance of the restrooms at the Casino, not whether it has any “influence” over how SMGII responds to tort claims. Plaintiffs allegations focus on the condition of the women’s restroom, not on anyone’s settlement policies. Therefore, the Tribe also is not a proper Defendant.
D. CONCLUSION
For all the reasons given above, the Court determines that Defendants’ Motion to Dismiss must be granted as to all four Defendants.
IT IS HEREBY ORDERED that Plaintiffs complaint be and it hereby is DISMISSED.

. Alternatively, Plaintiff asks to be allowed to amend her complaint “and complete proper technical tort claim notice!.]"

. It is no accident that the Ordinance requires that written notice be given to the CEO. That requirement is echoed in the provision regarding service of any complaint and summons filed pursuant to the Ordinance. That section also provides that, when a claim “in-volv[es] an act or omission of any Tribal Commission, authority, corporation or enterprise, or any agent, employee or office [sic ] of any Tribal Commission, authority, corporation or enterprise,1' then, "in addition to serving the Secretary of the Tribal Council and the Tribal Attomey’s Office,” "the chairman or chief executive officer of such Tribal Commission, authority, corporation or enterprise" "also” must be served. § 255.6(d)(5). Plaintiff may have failed to satisfy that requirement as well because she also did not serve the summons and complaint on the CEO of SMGII, instead serving only the Secretary of the Tribal Council and the Tribal Attorney. That is not the basis of Defendants' Motion to Dismiss, however, and the Court thus does not reach the issue.

. Plaintiff does not contend that SMGII is not a Tribal corporation. In any event, the Tribal Gaming Ordinance defines "corporation” as "the tribally chartered corporation responsible for developing, financing and operating Class II and Class III gaming activities of the Tribe on Grand Ronde Indian Land, currently Spirit Mountain Gaming, Inc. (SMGII).” Gaming Ordinance § (c)(7).

. The Gaming Ordinance provides that the Tribe has the "sole proprietary interest in * ⅜ * conducting any Class II and Class III gaming operations authorized by th[e] Ordinance." Gaming Ordinance § (d).

. In her response to the Motion to Dismiss, Plaintiff asked that, if the tort claim notice were found to be inadequate, she be allowed to amend her complaint and “complete proper technical tort claim notice!.]" It is far too late to "complete” her notice, however. She had only 180 from the date of the injury to provide proper notice and that deadline is long past.